We'll hear argument next in Case No. 15-1031, Howell v. Howell. Mr. Unikowsky. Mr. Chief Justice, and may it please the Court, in Mansell v. Mansell, this Court held that the Uniformed Services Former Spouses Protection Act does not authorize State courts to treat waived military retirement pay as divisible property in divorce. The question in this case is whether Mansell's holding applies only to waivers that preceded the divorce, or whether it applies to all waivers, no matter when they occur. And we respectfully submit that the latter interpretation is correct. And I'd like to make two points this morning. One is that we think the text of the statute compels our interpretation, and the second is that we think our interpretation just makes sense. So our first argument is based on the text. And I think it's just inescapable that what the State court did here was divide Petitioner's waived retirement pay. And I think that can be seen from the fact that if the State court's order had simply just said, henceforth, Petitioner's waived retirement pay is now divided, if that's the words of the modification order, there would have been no difference at all in effect than what actually occurred in the modification. So the court had said is, taking a look at what the retirement pay is now, how much it is, had specified then a dollar amount for the wife equivalent to what the half was before the disability benefits. That would be okay. And it takes disability later. She still keeps the amount that was awarded, the dollar amount. So the question was, if the modification order had simply said, you have to pay a dollar amount equal to the amount that you've waived, if that was the modification order, we think the same preemption concern would exist, because that's the economic equivalent of a division of the half. Sotomayor, I think Justice Ginsburg's question is, the original divorce decree here said the Petitioner is entitled to and is awarded as her sole and separate property 50 percent of Respondent's military retirement. If it had read Petitioner is entitled to $250 a month, period, full stop, to ensure that that is received by her, she'll get $250 a month from his military retirement pay. So if that was a settlement, then I think that it would be enforceable. Our position today has nothing to do with the enforcement of settlements. In this case, the divorce court said that the settlement as written only authorized Respondent to receive half of Petitioner's pension. That's why it modified it. But if the original order had simply specified a dollar value per month, then we would have no objection to enforcing that, in the same sense that if Petitioner had agreed to an express indemnification provision and thereby waived his right under the USFSPA, we'd think that litigation waiver would be okay, would be enforceable, just like any other waiver in litigation. So I do agree that if there is simply a dollar figure that Petitioner had signed, that would be unobjectionable. And in our case we would have no objection to enforcing that. Sotomayor, so could she go back to court now and ask for a dollar figure instead? I don't think so, because I think that that would be a modification imposed by the court. That would be that Petitioner never agreed to, so he's never waived this protection over there. Sotomayor, she can't go back into court. I thought in divorce courts you can go back and change circumstances. And seek a modification of the monetary awards. Why can't she do that? Well, I think the question is whether this particular type of change circumstance, which is a waiver of military retirement pay, authorizes this particular remedy, which is this indemnification order. Is the answer that there's a difference in adjusting alimony payments and property settlements that have been concluded? Yes, Justice Kennedy. Absolutely, we don't read the U.S. FSPA as interfering with State court's power over alimony. And I think we expressly say that in our reply brief. I mean, if Petitioner or, excuse me, Respondent needed more alimony, the statute has the savings clause that expressly says that she can come back to court and get more alimony. Ginsburg. But alimony is something that one spouse pays to the other based on economic need. The division of property gives a spouse the property outright. It's hers. It's not something that she is getting from somebody else. It is hers. So there's an enormous difference between equitable division of property and alimony. Yes, that is our exact position, Justice Ginsburg. We think that the statute does not interfere with the ability toward alimony, but this was a division of property. And here's a Federal statute which is defining the ex-spouse's property interest as half of the residual share of the pension. So this is a pretty basic question I should know the answer to, but when you talk about dividing the property, does that end by any proportion? You get two-thirds, one-third. It doesn't have to be 50-50? That's correct. So Arizona is a community property State, and so property is almost invariably divided 50-50. There are some exceptions which are not applicable to this case. Other States, equitable division States, sometimes deviate from 50-50 divisions. But even if it was 60-40, I think that would still be a division of property. It would just be an unequal division of property. Breyer, is it under the community property law that the 50 percent that the spouse received of the retirement pay was hers, even if they hadn't been divorced? In other words, what is community property? I thought community property is the two-spouse's interest in the property, each of which owns half from day one. Is that right? Yes, that is what community property – how community property works. But here the Federal statute is defining what the State's worth is. No, I'm not – I'm arguing for you in that case. I'll ask him. But that the divorce decree changed nothing. It simply gave her what was hers. Yes, that is our interpretation of the divorce decree. Sotomayor, so how could he take any action that impinges on what's her money or her property right? Well, I think that's the U.S.'s position and your adversary's, which is if as a result of the original settlement, divorce decree, it became her property, what right did he have any – to take any action that would remove that property or take it away from her? Well, I think the question is what is her property right. And you're right, that if you define her property right as one-half of the total retirement pay, regardless of whether a waiver has occurred, then yes, under that conception of that being her property right, in fact, Petitioner would have converted part of her property right. But the point is the Federal statute, what I think it's saying is it doesn't allow the State court to define the community property right that way. What it's saying is the definition of the community property right is the total amount of the retirement pay minus the waived portion. And so if the State court – in fact, that's actually what the State court did in the Petition Appendix, pages 12a and 13a. I mean, what it's saying is that Respondent's property right was half of the total retirement pay. But I think that's exactly what this Federal definition is designed to prevent State courts from doing. So, you know, that's why I think that it's just inescapable that what happened in this case was just a flat-out division of Petitioner's waived retirement pay. And so that's why we view this as just a direct conflict with Federal law. I don't think the Court needs to even get to implied preemption and purposes and objectives. We think this is just doing what the thing that Federal law says that State courts can't do. Ginsburg, what about then saying, we divided the property based on a certain expectation that the wife would have so much, and now, because the amount is lower, then the divorce decree should be reopened so we can give her more of another asset to make up for what she's missing? So I think that reopening the decree to just give her another asset would be, which is essentially what happened in this case, would be preempted by Federal law. Now, we're not saying Federal law preempts the situation where State court says, okay, we're going to find as a matter of State law that the ex-spouse just didn't understand what she was signing. There's some kind of mutual mistake. So the reopening of the decree would not be preempted. In that case, if the parties just reached a new settlement, that would be okay. Or if the divorce court entered a new decree that complied with Federal law, that would be okay, too. Ginsburg, but what would be noncompliant with Federal law if you reopened the divorce decree and the judge says, now you get a share, a larger share of some other property? Well, I think that that would essentially render Mansell a dead letter, because, you know, just returning to the pre-divorce context, the facts of Mansell where the waiver happened before the divorce, it seems to me that if a divorce court just said, I'm going to raise the equitable share by the exact amount of the waiver because I just don't agree with Mansell and I want to nullify it, I mean, that would just directly conflict with the whole point of Mansell's holding, which is that the court was saying that all the assets have to be divided 50-50. It just defined the relevant asset subject to division as the total amount of the military retirement pay, which I think is just contrary to the Federal definition. But could a court say, well, in light of the fact that the woman is not getting the usual community property division, that that factor could – that that could factor into the determination of alimony or the determination of child support? So I think it actually could, yes. I think that if the situation for the court was, you know, because of this waiver, I just – I can't afford daycare payments for the child and I'm responsible for them, and she can come back to court saying, I need child support, that's a need-based issue, it's not a property division, then, yes, this – the saving clause of this statute carves out child support and alimony orders from the preemptive force. So I think that as long as the court is applying child support and alimony standards, which are based on need, it's based on – they're usually temporary until the child becomes the age of majority or, you know, the wife gets back or the husband gets back on his or her feet. So as long as the court is actually applying the alimony and child support standards, we actually don't read the statute to impinge on a State court's authority at all. But that's just not what's happened in this case. Ginsburg. But as I pointed out, those are different animals. They're not – the property belongs to her. And alimony and child support. And alimony, suppose she remarries, it ends, right? Horwich. Yes. I'd like to just turn for a moment as to why we feel our position makes sense, because we framed our second argument in our brief as ensuring the purpose of the veteran keep all of his disability pay, both in form and in substance. I think it makes sense that Congress would have wanted veterans to keep all their disability pay for the obvious reason that it's the veteran who is disabled. And the point of the disability pay is to substitute for income that the veteran can't earn because of his or her disability. That's how it's defined. You get a disability rating if you have reduced income potential. And so I think that this – it makes perfect sense. I think everyone agrees that the veteran should keep the disability pay. The reason this dispute has come up is that Congress has made this decision to cut a veteran's pension or to force a veteran to waive a portion of his own pension, which has already been earned, if he also becomes disabled and accepts the disability pay. And that's a pretty harsh judgment that Congress made, essentially to protect the public fisc. But that's what Congress did. So I think that what the statute is doing is saying if the veteran is forced to do that, then the veteran and the ex-spouse will both have their amounts reduced by an equal amount. In other words, what's divisible is just going to be the residual share. So I think that's what the statute's doing. And then if you frame it that way, I think it makes perfect sense to treat the pre-divorce scenario and the post-divorce scenario as parallel, because I don't think that the goal of protecting disability pay really has anything to do with the timing of the disability relative to the divorce. In other words, if you have two disabled veterans and they're both divorced, I think that their interest in keeping their disability pay is the same even if one of them happened to become disabled the year before his divorce and the other one happened to become disabled the year afterwards. So I think that, you know, framed in those terms, I think the purpose of arguments don't distinguish between the pre-divorce and the post-divorce scenario. Sotomayor, The problem is, really, that when people are getting divorced and they already know they can't divide up the disability pay, that the courts have a full picture and can then determine alimony and child custody with those factors in mind. And we presume that at the time of their divorce, this woman was relying on a certain amount of income that would be fixed for the rest of her life, and she planned her life around that income. And he has now taken an act independent of her, and not just reducing her income, but with her reduction of income, he's also getting a tax benefit. So he's getting a, you know, whatever, 20 percent, a third more than she is by this unilateral act. In terms of policy, that is a substantially different impact. And one that, you know, the government's taking the position that if you're doing this post-divorce, you're changing the nature of the policy. I think that all we're asking for is for parallel treatment in the pre-divorce context and the post-divorce context. So what I'm saying to you, as a matter of policy, is that right? Well, I think it's the same. I don't know the answer legally, but there is a difference in terms of what Congress might have expected or not expected. Well, first of all, it's not really clear to me that the policy interests are so much stronger post-divorce than pre-divorce. They're different, but I'm not sure they're stronger. I mean, there's certainly a lot of equitable arguments in the pre-divorce context. I mean, these are typically spouses from longer marriages who often relied on the disability pay during the marriage. They may have, you know, quit their job to care for their veteran spouse who's disabled. Sotomayor, but that goes to the issues of alimony and child support. Those will get made up there. Well, they may get made up in alimony and child support, but, you know, the deprivation of property in that case has its own harshness. Now, I think there's different interests. Ginsburg's point is the divorce court will know, if he's already getting disability pay, then her share of the pension will be so much less. And with that knowledge, the divorce court can say, so I'm going to give her more of some other property. So I don't think the divorce court can do that in that context, because then Mansell would be essentially a dead letter. In other words, if the divorce court said, well, you know, this person waived his retirement pay, and, you know, I don't like that, and so, you know, I don't agree with the Mansell rule, so I'm just going to increase the equitable share to just balance out the waiver. I think they don't have to say that. Well, I mean, right? I mean, the alimony, they're all, it's not a set number that it has to be. And it seems to me that it may be a situation where you're certainly going to take into account the whole picture. And I think it would be perhaps unreasonable for the judge to say, well, I'm going to look at everything, figuring out the amount of alimony, but I'm not going to look at the fact that he's getting, you know, disability pay. That may be. And so we – if a court could do that before the decree, we also think the court can do that after the decree. All we're saying is that before the decree, the court couldn't just adjust dollar for dollar to compensate for the waiver, because that would essentially overrule Mansell. And if the court can't do that before the decree, we're just asking for parallel treatment after the decree.         Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Division. And this rule is not about setting alimony and child support. It just can't take into account this rule when distributing other kinds of property. Is that right? Right. Distributing property. Yes. I mean, alimony and child support is not really a property distribution. Right. You're making a distinction between need-based payments and property division. Yes. That is a distinction, yes. And this rule can be taken into account in the former but not in the latter. Right. And that's the same pre- and post-divorce. We're just drawing no distinction between the original decree and the modification. If there's no further questions, I'll reserve my time. Thank you, counsel. Mr. Workin. Mr. Chief Justice, and may it please the Court. The authority granted to the States by the Former Spouses Protection Act to treat marital to treat military retirement pay as property and divide it necessarily operates at the time of the divorce. The text of the Act, its primary purpose to protect the former spouse, and the practical realities of divorce make the time of divorce paramount. That is when family courts must determine the extent of all of the marital property, divide that property, and also coordinate the multiple moving parts of a divorce, which includes spousal maintenance, which is often intertwined with the division of property. Now, the authority to divide military retirement pay is limited only by the Act's exclusion of amounts of retirement pay that are then being deducted as the result of a previous waiver to receive disability benefits. And whether that division at the time of divorce occurs before the member's retirement, as the statute expressly allows, and therefore before any waiver has occurred, or the division occurs after retirement, the State law consequences of the property division must follow along. And those consequences can include the fact that the, in a particular State, that the retirement pay awarded to a spouse is considered to be that spouse's vested property. And also the consequential right of the State to formulate remedies to protect and affect that property right, to compensate for any damage that might be done to that property interest. And another consequence that I think has come up here today is that of the finality of the divorce decree, and whether the State court has the ability to go back and modify a division of property. I can't ---- Roberts. What is the general answer to that? I mean, again, there's a distinction between the finality of division with respect to property as opposed to some other, as opposed to cash, I guess, or income. Is there that difference? I think there's the general answer, Your Honor, is that the decree dividing to the extent it divides property is final, and for good reason. And in Arizona, certainly, when there is a settlement agreement, as there was here, and it then becomes incorporated into the divorce decree, it's impossible, I would say, to go back and modify the division of property. You know, one of the objectives of family law courts is to achieve finality and not have folks coming back in the future. Certainly, child support and spousal maintenance can be exceptions, but there has to be a substantial and continuing change of circumstances in order to justify revisiting, reopening, modifying child support or spousal maintenance. But property division is thought to be set in stone. At the time of divorce, the spouses are splitting the sheets, and the court must determine how many sheets there are and how big they are, and decide who gets what. And what that is dis – what is decided at that point in time is what they have going forward, and neither one can do anything to affect what was that community property that was divided and then becomes now the separate property of each of those spouses. Kennedy, so suppose the only asset is the pension. Then would the family court's order here be permissible? I'm sorry. Supposing that the retirement is the only asset? That the retirement is the only asset. And your question is what – Then what – would the family court's order here be proper? Yes. The order here to indemnify, to create a remedy here, of course. Whether it's the only asset or not, it's certainly in that hypothetical. Because her community property interest has been transformed into her separate property interest, and then unilaterally damaged by the actions of her ex-husband. Well, how do you deal with your adversary's position that her – borrowing from our prior case, that the only reasonable expectation that the court or she could have had was that his military pay was always subject to a potential deduction for disability pay? That's basically his argument, that the Act tells anyone relying on military pay that it can, as a matter of law, be changed by a disability award. I disagree with my friend, because – I know you do. The question is how and why. Well, Congress gave the States the right to treat this kind of property according to State law, and therefore, you know, going along with that, when in a community property State, or in any State, whatever the property scheme may be, the court gets to divide what was then before the court. And in this situation, there had been no waiver whatsoever. And so the court is looking at making a – looking at the big picture, as a couple of you have referenced. They're looking at all of the assets and making – and by the way, it's an equitable division in Arizona. It's not an even division, as in California and other community property States. And the court is doing what is equitable and trying to balance the division of property among them. Once having done that, the die is cast. It is set in stone. And the fact that the – When we enter into divorce decree, the divorce decree says, in addition, you're going to get half of what Uncle Joe gives Sam, the husband. But by that time, it turns out to be – I mean, from the beginning, Uncle Joe leaves property in a form that it's illegal to give to the woman. I can imagine cases of bizarre – I mean, can the State give money that later on it I mean, I don't know how that works. I would be very surprised if Ray Studecotter in divorce cases says, okay, I'm sorry, we have a decree here, and then we're going to violate Federal law because the decree violates Federal law, as it turns out. As I understand your hypothetical – Maybe it's too complicated. You're talking about a State court dividing – I'm saying there's a Federal law here, and the Federal law says, I'm very sorry, you cannot give this money to the spouse, for good reason or bad, perhaps bad. But it says you can't. And is the fact that you gave that money to the spouse ahead of time, why does that matter? That's his argument. And there are two things going on here, and one of them is at the time of this divorce and many divorces, there is no disability benefit to be paid. Yes, there is. There is a disability. The disability is that if it turns out that what you are giving over time is money that was turned in to get the disability, it is illegal for you to do it. That's what's there at the time of the decree. No. The – what is illegal is the division of retirement pay that has already been waived to receive disability benefits. No, that's not what it says in the statute. It says in the statute that it is illegal to treat disposable retired pay as property of the member and his spouse. That is what is now legal. That's legal, right? With an exception. The exception is the result of a waiver of retired pay. That you can't do. So you can't do it on day 1, you can't do it on day 20, you can't do it on day 30. And what they are saying is a well-known property interest. It is an interest that you do not get until day 40, but you can't divide it on day 1, just like it's a – like a, you know, there used to be these property interests that you received on a contingency. The statute in subsection D1 in the last sentence contemplates the division of military retirement pay even before the service member has retired and, therefore, before there could have been any waiver and any disability benefits taken. Breyer. That's true. So it's given to her, but it's subject under Federal law to a contingency. We used to have our first-year property class filled with this kind of stuff. I mean, you know, somebody would get a horse, but he'd only get the horse on the contingency that Uncle Joe died, which doesn't happen for 30 years, but nonetheless, there's something that happens to that property subject to the contingency on day 1. That's what this sounds like to me. And I respectfully must disagree. That's fine. Because it also says – it doesn't speak in the form of a contingency as I read it. It speaks in the form of authorizing the States to divide the retirement pay according to State law at the time of the divorce, and if at that time there is no disability – retirement pay hasn't been waived, no disability benefits are being claimed, they aren't being divided. What's being divided, and necessarily so, is the expectation of this retirement. And for good reason, because all these moving parts have to be somehow balanced equitably between these spouses, the State court gets to say, you get 50 percent or you get X dollar amount or you get X percentage, and it doesn't have to be 50 percent or 50-50, but whatever it is, the State court decides that in its wisdom at that moment in time, as only a State court can do best. Ginsburg-Miller Why isn't your solution – I mean, I think you're saying when he elects a disability, when he does that, then the State court can provide an indemnification for her that's equal to the amount that she's losing. But isn't that just an end run around the Mansell decision? What the Mansell decision says? Kneedler No. Ginsburg-Miller Why not? Kneedler Because it's not a – it's not a division of any disability pay. There's not a redistribution of property being made. This decree divided the military retirement pay 50-50, and that part of this decree was never changed when the court issued its remedy order to – for the benefit of Mrs. Howell. The 50-50 division still remained, but that 50 percent had become worth less, and by the unilateral action of the husband, so he was ordered to make a make-up payment to her to reimburse her for her loss. It really wasn't a modification of the decree at all, by the way. It was an enforcement. Roberts Maybe this isn't bad, but that's very legalistic in the sense that you're saying, well, you can't divide this, but you have to pay her money so that she's put in the same position as if you divided this. Is that your submission? Kneedler Well, you know, I understand the parallel that my colleague draws and that you suggest in your question, but it's not a legal equivalent. It's practically – there's no way to escape the fact that it's dollar for dollar because it wouldn't make any sense to give her a remedy for a lesser or greater amount than what she lost. Roberts If I were a legislator and I passed this law for a particular purpose, and at the end of the day, the result is the same as if the law hadn't had any – it has no practical effect at all, I would think that's contrary to what the legislation was designed to accomplish. But you as a legislator sitting across the street adopted this to protect that spouse and to enable States to divide the retirement pay as property according to State law at the time of the divorce. Kneedler Well, but maybe I'm the one who insisted on the part of the law that says when it's disability, you don't get to divide that. Roberts If it has already been waived, it cannot be divided. But here, when she divorced, it had not been waived. There is no disability to divide, and none was divided. And I think we should not lose sight of the fact that these parties made an agreement. This wasn't something that was litigated and adjudicated. It was the product of a settlement agreement, and implicit in that agreement is a covenant of good faith and fair dealing, and that one will not do anything in his discretion to injure the contract benefits of the other, the wife. And yet he unilaterally chose, voluntarily chose, to apply for disability benefits. Roberts The disability benefits started how many years after the divorce? Kneedler 13 or 14, Your Honor. Roberts Well, then I mean, I think it's not like there was a bait and switch involved. Kneedler I'm not suggesting that. But whenever it was, the agreement goes on far longer than that. And as I think was suggested in your colleague's question, Justice Sotomayor, that there was an expectation that this wife had, and it was basically rooted in that settlement agreement that they made. So and certainly, Mansell doesn't preempt the right of spouses to make agreements for the division of their community property. It may prohibit an agreement for the division of retirement pay that has already been waived to receive disability benefits. That much is clear, but that is the extent of the preemption or prohibition in Mansell. Sotomayor So the agreement, the court's order, I know, required him to pay a certain amount. It took care of the laches question. What happens moving forward? The military pays her 50 percent minus the disability pay, and he has to pay separately the difference. Kneedler  And if necessary ---- Sotomayor Where he gets it from, it doesn't matter. Kneedler Where he gets it from, you know, he has his share of the military retirement pay, and it can legitimately come from that. Sotomayor And you may not know this. I don't know if it's in the record. Does he have a job after he retired? Kneedler Your Honor, I do not know, and it is not in the record. If it were, I would know that, and I don't know. Ginsburg But you said he could pay her this amount, this indemnification, out of the disability. Kneedler No, he can pay it out of his share of the military retirement pay. His ---- let's say that, you know, he was getting ---- when they divorced, it was all military retirement, 100 percent, and let's say it gets reduced by 20 percent by virtue of his disability rating. So he still has 40 percent as the she of the original retirement pay. He can pay her out of his 40 percent of that retirement pay. He can also pay her out of other assets. He is not directed to pay her out of disability benefits, and this is not a situation where the record reflects that he has no other assets, and indeed he has his share of the retirement pay. I think it's key that Congress gave the States the right to divide retirement pay at the time of divorce according to respective State law, and that when that happens, the divided interests are vested in each of the parties. And this order to indemnify does not violate the Act. It does not preempt State law. It does not effectively divide disability benefits. And to a point raised by my colleague, the order is not one that modified the decree at all. It was an enforcement order. Now, I know you might say that the Arizona Supreme Court characterized it as a modification. The Court did so for a different reason. It was deciding whether a State statute regarding modification applied. It determined that it did not, but it first determined that there was a modification because there was no indemnification provision in the decree. But for purposes of this Act, a modified decree is defined in the definitions as a court order that affects a division of property. There was no division of property affected by the indemnification order. It was instead in the nature of an enforcement. In fact, the Arizona Supreme Court at least twice refers to it as a reimbursement order or an indemnification order or a make-up payment. It was enforcing. It never changed anything in the original divorce decree. So it was not a modification for purposes of the Act. What should the rule be? Given the concern of Congress for former spouses, Congress could not have intended to allow a servicemember to obtain a divorce, divide the MRP, and then apply for disability benefits, and waive MRP, and leave the former spouse without a State court order. Roberts. Well, it's the concern for former spouses is certainly evident in the Act. But as we've always said, no statute pursues its purpose at all costs. And there was obviously a different purpose applicable with respect to the part of the law that says you can't divide disability payments. So I don't think you can resort to the purpose of the statute in a general sense to resolve every subsidiary legal issue. But the primary purpose, according to Congress, was to protect the spouse. Yeah. And a subsidiary purpose was to do so in a way that preserved disability payments and didn't allow them to be divided. To be divided. But this is, again, a situation, a case in which there were no disability benefits to divide at the time of divorce when her property rights were vested in her. So this Court should therefore hold that the division of military retirement pay is determined according to State law at the time of divorce, and that an order remedying damage to such a share is not preempted by the Act. Thank you, counsel. Ms. Eisenstein. Mr. Chief Justice, and may it please the Court. Let me start with the concern that Your Honor has about what the effect of Manziel is under the rule that we propose. States, in our view, are permitted to give a relief to spouses after a post-divorce indemnification affects the already separated share of the wife. And it's still the rule of Manziel and the Spouses Protection Act still retains its effect because the subsequent waiver shrinks the pie that is available for the remedy, but it doesn't change or dictate what division the State court had to take, either in the first instance or in giving a remedy to the former spouse. So we take a broader view of the State court's ability to respond to changes in circumstance, whether that change be because of a waiver of disability benefits or any other reason, and that the Act's primary function is to leave to State law the ability to equitably divide these assets in the first place. Breyer, explaining this, I have an easier time, if you can explain it. What the decree says is 50 percent of the retirement goes to the husband and 50 percent to the wife. It doesn't say what the retirement is. Suppose that 10 years later, government raises the retirement. Does the wife get more? So, Your Honor, I believe under Your Honor's hypothetical, the answer is yes, but. Okay. Yes. Yes, but it is up to State court to determine. The State court says yes, okay? Yes. Now, second thing is, unfortunately, Congress lowers the amount. Does the half go down to the wife, too? So, once again, under, it depends on State law. So, typically, yes. Oh, it depends on State law. In other words, in other words, if you say that 50 percent goes to the wife, 50 percent goes to the husband, and you cut it, then more than 50 percent will go to the wife. That's right, because, so let me be clear what we think the role of the Spouse's Will Protection Act is. The Spouse's Will Protection Act instructs State courts how to calculate the disposable retired pay available for division, and otherwise puts disposable retired pay on equal footing as any other civilian asset. So then it allows a State court to treat the disposable retirement pay as any other veritable property in a variety of ways. One is, it can equitably divide those assets in any way it sees fit, from 0 to 100 percent. Breyer. Suppose the statute had said, following Mansell, that the wife cannot have more than 50 percent of the actual after-tax income from retirement. Then can the State do it? The after-tax income from retirement? Yes. Well, I think what the State could do in terms of a remedy is, all they could divide is the objective of the State. I'm saying, look, there's a statute, a Federal statute, says if taxes go up, or if the payments are reduced for retirement, under no circumstances can the wife obtain more than the reduced half, the reduced payment. Right. So if they could not do that. So then can the State court do something about that? It couldn't if it limited it to any other sources of income. I'm not keeping that out of it. Right. I'm saying, can the State just say, well, we don't care, there is a State statute which says that we have to keep the wife's share at no more than 50 percent. But let's forget about that. There is a Federal statute to that effect. We'll have our State law. It can't do that, can it? If I understand Your Honor's question, which is if there is only military retirement pay, and the question is can the wife get more than 50 percent share of it in contravention. In the face of a statute that says no. The answer is no. And that would be a. All right. If that says no, then why, if it goes down because of the choice of the husband who is protected in this choice by the exception, why is that different? It's different because there are other assets besides the military, the disability benefits used to satisfy the indemnification order in this case. And so there is a very particular. Is that the only difference? I think that's a significant difference. All right. That's the only difference. So in other words, if it says no, you cannot give the wife more than 50 percent of the pension, then what they could do is have a decree and it says the wife gets 50 percent, gets — sorry, you cannot give them more than 50 percent. I'm getting mixed up in my thing. It says you cannot give more than 50 percent, and then there's a statute that says you can't give 60 percent. But the judge says here's what I'll do, I'll give you 50 percent from this, and I'd like to give you more than 60 percent, so I'm going to take 10 percent from something else. Well, I think that the economic equivalence is not the only test. And that's the test that Petitioner wants this Court to adopt. I think this Court needs to look at the legal basis for the award. And as the discussion highlighted earlier, there are many economically equivalent ways that a court can reach the same division of property and total financial transfer from one party to the other, some of which are legal under this Federal law and some of which are not. Roberts. It seems to me that, in other words, they're saying — you're basically saying there's no real substance to this law. All the Court has to do is find some charade to get to the same result. I mean, would it be all right under your view if they say, okay, you get 50 percent of all the — there are no disability payments yet. You get 50 percent of the retirement pay. This is the — but in the event that there is disability — there are disability payments that result in a reduction of the military pay, I appreciate that I cannot divide the disability pay, but your share of the retirement pay is going to go up as if we were dividing the disability pay. Is that good or bad? Panner. Well, Your Honor, I think it is — it is okay to the extent that the Court is applying its generally applicable principles of property division to treat the portion that is available under Federal law. The Court wants to make sure that the spouse, whether wife or husband, receives half of the military retirement pay, and that — and going forward. So she does — he or she does exactly what I set forth. She says, okay, you're entitled to half, but if there's disability pay, you're entitled to an additional amount exactly equal to half of the disability pay. Well, yes. I think the statute expressly contemplates fixed sum awards, and so that the — So you have a law that says — you have a law that says you can't divide disability pay, and yet you say it's okay to say, well, I'm not going to divide it, but I'm just going to award you an amount equal to what it would be if I divided it. Well, let me be clear. That's the sort of thing that gives, you know, law a bad name. It's just — it's a — it makes a charade out of the statute. Well, Your Honor, I respectfully submit that State courts have a lot of experience in treating differently separate property, marital property, separate income, property interest. That is the kind of bread and butter that State courts — those kind of distinctions are the bread and butter that State courts apply their own State law to. And so this Act — What does that have to do with my question? So the question is, Your Honor, in terms of the ability — Your Honor was concerned that the State court order could be a sham. But State courts are in the practice of treating as — and defining and treating as what is the quantum of marital property and fairly applying those State rules. So what the Spousal Protection Act does is it throws to the State court the broad authority to treat disposable retirement pay as marital property along with all of the civil assets. Having made that division and giving that broad authority to divide the property, presumably it comes with the ability to enforce that division. And the spouse's now separate property interests are presumably given the bundle of rights that the State would normally give to protect it, including — Well, but again, I mean, the law does something else, too. It says you cannot divide disability payments. Right. So that takes the pie that can be divided and shrinks it. It doesn't tell State courts how to allocate that benefit. And so when it comes to considering the role that disability benefits play, we propose the role should be that disability benefits cannot be treated under the State law as divisible property. But it can be a consideration. And most State courts under their equitable division schemes consider the separate income and property. Roberts. Roberts. You don't say it just can be a consideration. You say it can be divided just in a way that the law prohibits, so long as we don't say it's divided, so that we take half of it and add it to the required military pay. Well, Your Honor, we don't — I don't interpret Your Honor's hypothetical as a division of property. I interpret Your Honor's hypothetical as giving a contingent interest in other property that may be available. The work that — But money is money. Whether it gets the additional amount from the disability pay or from something else doesn't make a difference. Well, Your Honor, money isn't money when the State court originally had the broad discretion to allocate anywhere from 0 percent to 100 percent of not only the civilian assets, but the disposable retirement pay in the first instance. But I think the question is, can a State depart — a State court depart from the rule that the State court would use in dividing property solely for the purpose of making up for the fact that the disability payment cannot be divided? No. And so — I thought that's what you were saying they could do. No, Your Honor. I think that the court can use its broadly applicable rules for enforcing existing property divisions. In this case, the Arizona rule is one that prohibits a party from unilaterally harming the interest of the other spouse and gives a make-up remedy. But there's still important protections that the Spousal Protection Act gives to disability benefits. No matter what, the anti-attachment provisions — this isn't the Spousal Protection Act, other Federal law, which is the anti-attachment provision — protects disability benefits from any kind of award to satisfy a property claim. It can be used for alimony and child support. But in the event that there is only disability benefits at issue, there is no relief. Roberts. Thank you, counsel. Unikowsky, you have 13 minutes. Thank you, Mr. Chief Justice. So I actually agree that finality in divorce decrees is very important. And we're not — our position is not trying to alter sort of ordinarily applicable rules of res judicata. But the question in this case is finality as to what. And we have an answer from the Arizona Supreme Court. The court interpreted the decree to say that what it did was it divided Petitioner's pension, whatever it was. And that is a ruling that I think we have to accept as this case reaches the court. That's a State law interpretation which binds this court. And so what the court held, however, is that it was not going to enforce the degree as written. It was going to import a State law rule that basically says that the relevant divisible asset was the total amount of the retirement pay and divide that. And I think the court is quite clear in saying that it conceptualizes the property interest as the total amount of money that Petitioner was receiving. And it said that by waiving retirement pay, Petitioner converted a portion of Respondent's property. And so what it's saying is that Respondent holds a property interest in half of that waived amount. So that's just the same thing as treating waived retirement pay as divisible. And so I don't think that's a good way to put it. Ginsburg. How consequential is the issue before us? Because if you're right, then in all future divorce settlements, they won't say half of the military retirement pay. They'll give a dollar amount which is equal to what the military retirement pay is before any disability payment kicks in. I mean, that might be negotiated for consideration. I mean, there's actually a lot of reported cases in which the lawyer for the spouse  says, look, I want to get half of the MRP, I want to get a dollar amount that's equivalent to what half of the MRP is right now. Well, I mean, the veteran doesn't have to agree to that. I mean, the settlement's bilateral. And if the veteran doesn't agree, then they'll just go to divorce court and there will be a decree where the court, we would say, would have to just divide the retirement pay as mandated by Congress. Now, we agree that settlements are good, and there have been many reported cases where the veteran says, look, I'll make you this promise if you agree to give me, you know, the car or whatever. So we're not reading this statute as impinging on settlements. But in this case, the Court held that what the settlement was was just dividing the pension, whatever it was, 50-50. The fact that Petitioner is required to pay this reimbursement order, it's not what he had agreed to. It's this order imposed by State law saying that it was going to treat Respondent as holding a property interest in half of the amount of the waived retirement pay, which we think is what the Federal statute prohibits. And in response to Justice Sotomayor's question earlier, yes, I think that the reasonable expectation is that the waivers might occur. I think it's important to recognize that waivers of retirement pay for disability are not rare or obscure. There's hundreds of thousands of veterans who have done just that. And I don't think it's a tremendous shock to an experienced divorce lawyer that this might happen. And so during negotiations for a divorce settlement, this may come up. So I just think the idea that, you know, there's no way to predict this could conceivably happen, I think is just inconsistent with the reality of divorce litigation in military divorces. I'd like to respond to the comment of counsel about other assets, that it's perfectly fine to divide the equivalent of disability pay as long as there's just other assets used to fund it. So first of all, I think that's quite contrary to this Court's decision in Hillman and several other cases. I think it's both counterintuitive, and I think that the holding of those cases is that you can't do that. Because just the four corners of the Hillman holding was that, you know, Federal law preempts a statute that doesn't directly act on property, but just has property go into a bank account and then is transferred to the other bank account, which is essentially the same situation as here. And I think it's also quite pertinent that what the statute says is that it's division of waived retirement pay that's impermissible. And recall that waived retirement pay literally is not money you're getting, that the definition of waived retirement pay literally is the money that you're not getting so you can get disability pay. So when we talk about dividing waived retirement pay, what just that inherently means is forcing you to pay an amount from your general assets equal to that waived retirement pay to the other spouse. So I just think that, you know, it's not even just legalistic. I just think the statute cannot be construed to permit operation on the general assets. And I just want to make one other point, and, you know, Justice Sotomayor asked questions earlier about sort of the policy distinctions between pre- and post-divorce waivers. And we're not denying that there's no policy distinctions at all. And, I mean, we can't deny that. Of course there are differences in policy. And I think that the interest of the disabled veteran is the same before and after. But there are policy distinctions at stake. I think the question in this case is whether this statute can be interpreted to recognize that those policy distinctions and distinguish between those two scenarios. And I just don't think you can get it out of the statutory text, which does prohibit waived retirement pay from being treated as divisible no matter when the waiver occurs. If the Court has no further questions, I'll rest. Thank you. Roberts. Thank you, counsel. The case is submitted.